**Anthony Paul MARULLO, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 20756.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1964.

Rehearing Denied April 8, 1964.
See 330 F.2d 609.

Sam Monk Zelden, New Orleans, La., for appellant.

William J. Hamilton, Jr., Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before CAMERON, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

In January 1962 five men broke into a post office in Florida and made off with the safe. Among the contents were ·a money order validating stamp and 681 blank money order forms. Anthony Marullo, the defendant-appellant, although not involved in the burglary, agreed to take a hundred of the money orders on consignment and to pay $25 for each one successfully negotiated. At the time, Marullo and Joseph Ricks were renting a room in the Pines Motel in Jefferson Parish near New Orleans. Ricks had the misfortune to ask his uncle, Jesse Krause, then managing the Playhouse Bar in New Orleans, to pass the money orders. Krause agreed to do so. Instead, however, he reported the whole story to the postal authorities who persuaded him to act as their agent in his transactions with Ricks and Marullo. Krause met the two men in the Playhouse Bar and paid Ricks $70 for a $90 money order. Shortly after this occurred, New Orleans police officers picked up Ricks and Krause and took them to the First District police station. Marullo, who had left the Bar just as the police officers approached, was picked up later and also taken to the station. While Ricks was in custody and still under the impression that Krause was a co-conspirator, Ricks told Krause that the money orders were under the cabin at the Pines Motel. He asked him to obtain them and destroy them, should Krause not be booked.

Krause was released after he had been in custody about fifteen minutes. Then Krause, with a postal inspector and police officers, drove out to the Pines Motel, where they were met by Jefferson Parish officers. They went into the room where Ricks and Marullo had been staying. There they found one of the stolen money orders in "somebody's" trousers. After the officers searched the room, Krause went outside and crawled under the cabin, which rested on brick pillars and was about one to two feet off the ground. He removed from the top of one of the pillars a paper bag. Inside the bag were stamp pads, ink, date stamps, validating stamps and, needless to say, a number of the missing money orders.

It is undisputed that the search was conducted without a warrant. Both Ricks and Marullo were then in custody.

At the trial the money order extracted from "somebody's" trousers was excluded by the court. The articles in the paper bag were admitted over objections of counsel and after a hearing on a motion to suppress, granted under Rule 41 (e), C.F.Crim.P.

Marullo was indicted for conspiring, in violation of 18 U.S.C.A. § 371, to steal, convert, receive, and conceal stolen Government property, consisting of postage stamps, cash, and money orders, and for the false making of the money orders so obtained.

He was tried alone before a jury. Upon the jury's verdict of guilty, and after denial of his motion for a new trial, he was adjudged guilty and sentenced to the custody of the Attorney General for three years. This appeal, taken *in forma pauperis*, followed.

The able and resourceful attorney for the appellant contends that the area under a house is within the curtilage and is therefore protected from unreasonable searches by the Fourth Amendment. This is a persuasive argument. It would be more persuasive if the validity of searches and seizure turned only on "curtilage". Webster's New Third International Dictionary (1962) defines it as a "yard, courtyard, or other piece of ground included within the fence surrounding a dwelling house". But the Constitution does not speak of curtilage. It speaks of the people's right to be secure in their "houses" against unreasonable searches and seizures. Carroll v. United States, 1925, 267 U.S. 132, 147, 45 S.Ct. 280, 69 L.Ed. 543. The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath, or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This case is controlled by Giacona v. United States, 5 Cir. 1958, 257 F.2d 450, cert. den'd 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104. In Giacona a narcotics agent, acting on reliable information, found marijuana in tobacco cans in a paper bag hidden on foundation blocks supporting the building in which the defendant ran a grocery store. He opened the bag, examined the contents, and restored it to its hiding place. The next morning a fellow agent secured a warrant to search the premises. That evening the agent saw the defendant throw something under the house, and arrested him. They recovered the bag and, later, it was admitted in evidence. At the trial the defendant objected to both searches. Since there was no warrant in the instant case, only the Giacona holding on the first search is relevant.

In Giacona this Court upheld the reasonableness of the search, pointing out that the "preliminary search did not extend to the inside of the store building, but was confined to the top of a foundation block, only a foot or two removed from the 'open fields' which are not within the protection of the Fourth Amendment"; what "may be unreasonable in a search of a man's house, may be entirely reasonable in a search of his place of business."

Here too the search which is under attack was limited to a specific area under the house. (The money order seized in the search of the room was excluded.)

A private home is quite different from a place of business or from a motel cabin. A home owner or tenant has the exclusive enjoyment of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards, and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of public or shared property in motel surroundings that is entirely lacking in the enjoyment of one's home.

As Judge Burger, dissenting, said in Work v. United States, 1957, 100 U.S.App.D.C., 237, 243 F.2d 660:

> "The Fourth Amendment was designed to safeguard the individual's right of privacy in his home and in his personal effects against arbitrary intrusion by government officials. I cannot find a fundamental constitutional right to privacy in the garbage or trash pail of a rooming house where the receptacle is located out of doors in sight from the street and where there is an admitted constant invitation to the public authorities of the District to remove the contents as refuse."

Nor can we find a motel occupant's right to privacy in the top of a brick pillar supporting the motel cabin so that there is just about enough room for a man to crawl on the ground under the cabin.

The judgment is affirmed.