**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert STROBLE and Vera Stroble,**
**Defendants-Appellants.**

**Nos. 20081, 20082.**

United States Court of Appeals,
Sixth Circuit.

Sept. 25, 1970.

**1274**

Ivan E. Barris, Detroit, Mich., for appellants; Louisell & Barris, by Carl Ziemba, Detroit, Mich., on brief.

Ralph B. Guy, Jr., Chief Asst. U. S. Atty., Detroit, Mich., for appellee; James H. Brickley, U. S. Atty., Henry J. Maher, Asst. U. S. Atty., Detroit, Mich., on brief.

Before CELEBREZZE, Circuit Judge, O'SULLIVAN, Senior Circuit Judge, and KALBFLEISCH, District Judge.*

KALBFLEISCH, District Judge.

The appellants, Robert and Vera Stroble, were husband and wife and at all times relevant to this criminal case were living together with their family in Allen Park, Michigan. They were tried jointly and convicted of a violation of 18 U.S.C. § 659. The indictment charges:

"that on or about April 14, 1969, in the Eastern District of Michigan, Southern Division, Robert Stroble and Vera Stroble, defendants herein, did unlawfully, willfully and knowingly have in their possession chattels of a value in excess of one hundred dollars, that is three (3) Admiral color console television sets, serial numbers A-353553, A-353562 and A-353569,

---

* Honorable Girard E. Kalbfleisch, United States District Judge for the Northern District of Ohio, sitting by designation.

which had been stolen, embezzled and unlawfully taken and carried away from a vehicle of the Holland Trucking Company, No. 20–502, that is a 1969 Strick van, serial number 105645, while moving in interstate commerce from Admiral Corporation, Harvard, Illinois, to Admiral Detroit Division, 11111 Lappin, Detroit, Michigan, and Robert Stroble and Vera Stroble then knew the said chattels had been stolen; in violation of Section 659, Title 18, United States Code."

On the day prior to the commencement of the jury trial the court heard and sustained a motion of the appellants to quash a search warrant and suppress as evidence an Admiral television set identified as "Admiral set, Model 3L 1118, Serial No. AO-353562." It is not disputed that officers seized the television set described in the motion at appellants' residence during the course of a search pursuant to a search warrant executed by United States District Judge Frederick W. Kaess.

The actual affidavit in support of the search warrant does not appear in the transcript nor in the joint appendix. However, based upon the nature of the case and upon the statements of counsel and the court in the course of the hearing on the motion (Tr. 4–32); and based upon the most favorable interpretation of the authorities relied on by the movants—particularly Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.E.2d 637; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441— the motion to suppress requires serious reconsideration. These comments are included in this opinion in light of the Court's decision that the conviction be reversed and the cause remanded for a new trial.

Subsequent to the selection of a jury, but prior to the introduction of any evidence, the appellants moved for a mistrial for the reason that the judge had read the indictment to the prospective jurors. Having at the time of the reading of the indictment, and in the general charge, thoroughly and properly instructed the jury as to the function of the indictment in a criminal case the court was correct in overruling the motion for a mistrial.

The trial court was correct in admitting into evidence Government's Exhibits 1, 2, 3, 4, and 5 based upon the testimony of Philip Russo and Henry Kochanowski. See Doss v. United States, 355 F.2d 663.

The Government contends that the absence of the signatures of the delivery truck driver and the consignee on Exhibit 5 proves beyond a reasonable doubt that the trailer loaded with 108 color television sets had been stolen. We agree that the exhibits establish the interstate shipment of and the presence of the trailer in the piggy-back yard of the Chesapeake and Ohio Railway on April 5 through April 7, 1969; however, no evidence was introduced as to the whereabouts of the trailer from April 7 to April 15, 1969. The Government relies upon the absence of the signatures of the delivery truck driver and the consignee of Exhibit 5 as being sufficient to prove that the trailer was not delivered to the consignee, but that fact alone does not permit the inference that at some time between April 7 and 13 there was an unauthorized or unlawful taking of the trailer from the piggy-back yard. The Government certainly had witnesses available from the railroad, the delivery truck driver, the consignee, or others, to supply the evidence necessary to establish the unauthorized taking or absence of the trailer from the piggy-back yard and its later recovery by the police.

It was not error to permit the Government to introduce on direct examination the prior criminal record of the witness Margaret Erikson. United States v. Freeman, 302 F.2d 347, 350 (2d Cir. 1962); United States v. Murray, 297 F.2d 812 (2d Cir. 1961); United States v. Mahler, 363 F.2d 673, 678 (2d Cir. 1966).

■ Government's Exhibit 6, an empty carton, and Exhibit 6-A, an IBM card attached to the carton which, according to the transcript (pp. 148–50), was lying by the side of two garbage cans adjacent to the curb and was observed by a police officer while he was still on the public street, were not a part of the curtilage. Under either the plain view theory (Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968)), or the related idea of abandonment (United States v. Minker, 312 F.2d 632, 634–635 (3rd Cir. 1962), cert. denied 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978) this evidence was not within the curtilage of the home protected by the Fourth Amendment. Wattenberg v. United States, 388 F.2d 853, 857 (9th Cir. 1968); United States v. Potts, 297 F.2d 68, 69 (6th Cir. 1961). In Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, it is stated:

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (See also *Wattenberg*, supra, 388 F.2d 857–858.)

The record establishes that the Strobles were not seeking to preserve Exhibits 6 and 6-A as private, hence these items were not protected by the Fourth Amendment.

■ The principal issue raised on appeal and at trial concerns the sufficiency of the evidence to support a jury verdict. In testing the sufficiency of evidence on appeal, on a defendant's motion for a judgment of acquittal, or on a motion for a new trial, the evidence and all reasonable inferences therefrom must be construed most favorably to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Luxemberg, 374 F.2d 241, 248 (6th Cir. 1967). The test is the same where the evidence is purely circumstantial. Holland v. Unit-

ed States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Conti, 339 F.2d 10, 12 (6th Cir. 1964); United States v. Francisco, 410 F.2d 1283, 1286 (8th Cir. 1969). The verdict of the jury must be maintained if there is any substantial evidence supporting it.

It is undisputed that Mrs. Bernice Beulow, a next door neighbor of the appellants, observed a truck in appellants' driveway between 3:30 and 5:00 P.M. on April 13, 1969. She testified that an unknown number of Admiral color television sets were in the truck; that she saw four sets unloaded from the truck by two boys; and that Mr. Stroble's son was in the garage where the four sets were placed. Mrs. Beulow further testified that on April 14th "around seven" in the morning she saw "a television picked up by an old blue panel truck and also a station wagon that had been parked there all night that had a television loaded on it." Mrs. Beulow was then asked (Tr. 142):

"Q  In point of time, how long after that pickup with the blue panel did you see the subsequent pickup with the station wagon, I believe you said?

"A  Well, it wasn't a pickup, I mean, the kids just loaded this television set in the station wagon, which was around 7:30, quarter to eight in the morning. There was an awful lot of activity is the only reason I heard this."

Mrs. Beulow never testified that she saw either of the appellants at any time during the activities which she observed and as to which she testified.

Mrs. Margaret Erikson testified that about 2:30 A.M. on April 14, 1969, she received a telegram from Mrs. Stroble after which she then had a telephone conversation with Mrs. Stroble. Mrs. Erikson then testified, without objection, as to that telephone conversation (Tr. 208):

"Q  Well, what was said in the course of that telephone conversation?

"A * * * And she said: You didn't have to call right away, but, she said, Bob got a good deal on a TV; and if you want one, come out in the next few days and it's two hundred and twenty-five dollars."

She further testified that at about eight o'clock on the morning she received the telegram she arrived at the Stroble residence, and she was then asked (Tr. 210):

"Q Was Mr. Stroble there?

"A Not that—I couldn't see him downstairs."

What the witness meant by that answer was not elicited by the Government counsel. Since it appears from Mrs. Erikson's testimony that all of her conversation with Mrs. Stroble concerning the television she was buying occurred in the front room of the Stroble house, her answer ("I couldn't see him downstairs.") must be interpreted to mean that he was not present. However, on page 212 of the transcript Mrs. Erikson was asked:

"Q Was any reference made to what you should do about your set?

"A Philip and Jimmie would have to put it in the car because Bob had a bad back * * *."

Here again the Government counsel did not pursue this answer to ascertain whom she referred to as "Bob."

▮ Although the testimony of Mrs. Erikson clearly links appellant Vera Stroble with possession of one of the television sets itemized on Government's Exhibit 2, the only evidence associating Robert Stroble with any of the alleged stolen television sets is the statement by Vera Stroble in her telephone conversation with Mrs. Erikson, to wit, "Bob got a good deal on a TV." Since this statement of Vera Stroble was not shown to have been made in Robert Stroble's presence it was not binding upon him, absent additional evidence of a common criminal enterprise between the appellants. Wong Sun v. United States, 371 U.S. 471, 490, 83 S.Ct. 407;

Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. Although the court did charge that this statement by Vera Stroble was not to be considered as binding on Robert Stroble "unless and until you find from the evidence presented here that Mr. and Mrs. Stroble were engaged in a common criminal enterprise," (Tr. 537), there being no additional evidence of a common criminal enterprise, this instruction was unlikely to have wiped from the brains of the jurors the effect of such a non-admissible declaration. The only testimony connecting Robert Stroble with the charge in the indictment was that on April 13, 1969, four television sets were unloaded and placed in the garage at his residence; that on April 14 Mrs. Erikson purchased a set from Mrs. Stroble; and that an empty carton was lying near the curb at his residence on April 15; plus the fact that Robert Stroble and Vera Stroble were living together as husband and wife at the residence where these incidents occurred.

▮ At best, as to Robert Stroble we are dealing with constructive possession. There are numerous cases making 18 U.S.C. § 659 applicable to constructive possession. United States v. Casalinuovo, 350 F.2d 207; Feinstein v. United States, 390 F.2d 50, 54 (8th Cir. 1968), cert. denied (Jackson v. United States) 392 U.S. 943, 88 S.Ct. 2327, 20 L.Ed.2d 1405. For a definition of "constructive possession" see Casalinuovo, supra. In the case of United States v. Russo, 123 F.2d 420, the defendant was not shown to have entered the garage during the time between the theft and the discovery of the stolen goods, and therefore it was held the evidence did not support a guilty verdict.

Vera Stroble, not Robert, sold the television set, and it was not shown that Robert was at his residence during the period from the time the sets were delivered until his meeting there with the police.

Judge Weick, of this Circuit, is the author of an excellent and exhaustive opinion on the subject of "inference of

guilty knowledge" in the recent case of United States v. Prujansky, 415 F.2d 1045 (6th Cir. 1969), wherein he reaffirmed the holding in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943):

> " * * * there must be a rational connection between the fact proved and the inference to be drawn." (P. 1050.)

The conviction in *Prujansky*, supra, was affirmed not only upon the appellate court's finding that the proof was sufficient but also upon the sufficiency of the charge of the district court and the fact that no objection was made to the charge by Prujansky. However, in the case before us, the appellants did object to the court's charge and are not limited to the plain error rule as applied in *Prujansky*. In light of the nature of this case, serious doubt is cast upon the adequacy of the charge with reference to inference of guilty knowledge (Tr. 546–47); and the rule in *Prujansky*, supra, Aron v. United States, 382 F.2d 965, 970–971 (8th Cir.), and *Tot*, supra, should be applied when the case is retried. There is little wonder that the trial court had great difficulty in ascertaining the correct course to follow and the precise positions of the parties since the transcript reveals that arguments of counsel at one stage consumed a day and a half and 214 pages of the transcript. (Tr 228–442).

 One further point requires mention. Neither appellant testified, although they offered four character witnesses in their defense. The court, as part of its instructions, said:

> "Ordinarily it is assumed that a witness will speak the truth, but this assumption may be dispelled by the appearance and conduct of the witness or by the manner in which a witness testifies or by the character of the testimony given or by the evidence to the contrary of the testimony given." (Tr. 542–43.)

This instruction is erroneous, because it tends to interfere with the jury's right to determine the credibility of witnesses and because it conflicts with the presumption of innocence of the appellants. United States v. Meisch, 370 F.2d 768, 773–774 (3rd Cir. 1966); United States v. Johnson, 371 F.2d 800, 804–805 (3rd Cir. 1967). This instruction, however, was unobjected to at trial and was not plain error. See United States v. Boone, 401 F.2d 659, 661–662 (3rd Cir. 1968), cert. denied Jackson v. United States, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463; and Marsh v. United States, 402 F.2d 457, 458 (9th Cir. 1968). Still, the instruction is not desirable and should not be repeated at a new trial of either defendant.

Where appellants have moved for a new trial and a judgment of acquittal, it is within the power of an appellate court to grant a new trial even where the present state of the evidence justifies a judgment of acquittal. Bryan v. United States, 338 U.S. 552, 559–560, 70 S.Ct. 317, 94 L.Ed. 335; Brandt v. United States, 256 F.2d 79, 81 (6th Cir. 1958); and United States v. Dunn, 299 F.2d 548, 555–556 (6th Cir. 1962).

Substantial justice requires a new trial of all the issues as to both appellants.

Reversed and remanded.