**Robert FIXEL, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

**No. 72-3714.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1974.

Jerome M. Rosenblum, Hollywood, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., William Rogers, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before AINSWORTH, GODBOLD and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Petitioner Robert Fixel appeals from the district court's dismissal of his petition for a writ of habeas corpus. Fixel's claim is that his conviction was based on evidence obtained as a result of an illegal search and seizure.

In late April 1970 Detective Sergeant Joseph A. Valdes procured a search warrant to search petitioner's home, an apartment in a four-unit apartment building, in Key West, Florida. Valdes, accompanied by Deputy Sheriff Sergeant George Knapp, proceeded to petitioner's home to execute the warrant. When the officers arrived, Valdes instructed Knapp to conceal himself at the rear of the building and observe any activities that might occur. While watching the rear of the house, Knapp observed petitioner Fixel on three occasions leave the house and go to a particular place in the backyard. On each occasion Knapp watched petitioner remove a black shaving kit from beneath some rubbish located underneath a tree, but was unable to identify any object that petitioner was either removing or placing in the shaving kit.

While Knapp was watching the backyard, Valdes observed the front of petitioner's house. Over a forty-five minute period, Valdes saw five or six people enter the building. Apparently each time someone entered Fixel woud go to the backyard, return and go back inside the building and then the visitors would leave. Finally, Valdes concluded his surveillance, met with Knapp and, while Knapp went into the backyard and got the shaving kit, Valdes executed the search warrant. Fixel was found in the apartment with three other persons, but no narcotics were discovered. Valdes testified that Knapp entered the apartment within two minutes after Valdes entered and had in his possession the black shaving kit from underneath the tree in the backyard. The bag and its contents were delivered to a chemical analyst, Henry Purcel, who testified at petitioner's trial that the bag contained heroin. On the basis of this evidence, the jury found petitioner guilty for possessing the proscribed substance.

Petitioner appealed his conviction to the Florida Court of Appeals and that court affirmed his conviction. Without relying on the search warrant, the court of appeals held that "[t]he seizure was, we think, incident to the lawful arrest." Fixel v. State, 256 So.2d 27, 29 (Fla. App., 1971). The Florida Supreme Court denied certiorari without rendering an opinion.

Fixel petitioned for a writ of habeas corpus in the United States District Court for the Southern District of Florida. The court upheld the validity of the search because it felt that probable cause for Fixel's arrest was established independently of the warrant. As the arrest and search were substantially contemporaneous, the court stated that the trial court did not err in refusing to suppress the heroin. With regard to the warrant, the court noted that "the record is clear that the state abandoned the claim that the seizure was made through the issuance of said warrant." Likewise, our analysis proceeds on the premise that the search here was warrantless.

## I.

The first issue is whether the search and seizure that revealed the heroin can be sustained as incident to a lawful arrest.[1] The Supreme Court in Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969), outlined the standard for conducting a search incident to a lawful arrest as follows:

". . . When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

*Id.* at 762–763. Measured against this standard, the facts of this case do not support a lawful search of the black shaving kit. When Valdes entered Fixel's home, Fixel was in the apartment, obviously not within reach of the black shaving kit hidden in the backyard. Indeed, Knapp obtained the shaving kit from the yard and brought it inside the apartment. There is simply no convincing argument that the shaving kit, concealed in the backyard of the building, was within the "immediate control" of petitioner, who was inside the apartment. Thus we cannot conclude that "the law enforcement officials on the scene reasonably expect[ed] the arrested person to gain hold of a weapon or evidence in the area searched." United States v. Jones, 475 F.2d 723, 728 (5th Cir., 1973); *see* United States v. Harrison, 461 F.2d 1127, 1128–1129 (5th Cir., 1972), cert. den. 409 U.S. 884, 93 S.Ct. 174, 34 L.Ed.2d 140 (1972).

We find support for this conclusion in our recent decision of United States v. Bell, 457 F.2d 1231 (5th Cir., 1972). In *Bell* the defendant was arrested at the door of his home. After Bell was removed from the premises to be taken before the magistrate, the investigating officers began to search his home and yard. Invalidating the officers' search

---

1. Probable cause for the initial arrest of petitioner Fixel was established. An informer told law enforcement officials that a large quantity of narcotics was being sold on these premises. Using this same informer, the officers conducted a controlled purchase of marijuana, although it is not stated when the purchase occurred or if it was from Fixel. Furthermore, known traffickers in narcotics had been seen entering and leaving these premises. But most importantly, the officers observed the extremely suspicious actions of petitioner making trips to the backyard of his home and concealing the shaving kit there on the day of the arrest. In light of these circumstances, we think the agents could reasonably believe that a crime had been or was being committed. Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Gonzalez-Perez, 426 F.2d 1283, 1286 (5th Cir., 1970); Johnson v. Middlebrooks, 383 F.2d 386, 387 (5th Cir., 1967).

of the yard under the even broader pre-*Chimel* standard, *see* Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), Judge Clark, writing for the court, specifically noted that "we have found no case that would permit this search to extend to the yard. . . . The search of the yard was clearly too remote in time or place from the arrest to be incident to that arrest. The search began after Bell had been taken away and continued for more than two hours." United States v. Bell, *supra*, 457 F.2d at 1240. Although the facts in *Bell* reflect a search more remote in time and place than in the instant case, we feel that the search of petitioner's backyard exceeded the limitations enunciated in *Chimel*.

## II.

▇▇▇ The second issue is whether Fixel's right against unreasonable searches and seizures was offended when the officer physically entered his backyard and seized and searched the shaving kit thus revealing the heroin. The sacredness of a person's home and his right of personal privacy and individuality are paramount considerations in our country and are specifically protected by the Fourth Amendment. The Fourth Amendment's protection, however, extends further than just the walls of the physical structure of the home itself. The area immediately surrounding and closely related to the dwelling is also entitled to the Fourth Amendment's protection. In defining the surrounding area entitled to such protection, the courts historically have found helpful the common law concept of curtilage,

meaning "yard, courtyard or other piece of ground included within the fence surrounding a dwelling house." Marullo v. United States, 328 F.2d 361, 363 (5th Cir., 1964), *quoting* Webster's Third New International Dictionary (1962). *See* United States v. Molkenbur, 430 F.2d 563, 566 (8th Cir., 1970); United States v. Davis, 423 F.2d 974, 977–978 (5th Cir., 1970); United States ex rel. Boyance v. Myers, 398 F.2d 896, 899 (3rd Cir., 1968); United States v. Mullin, 329 F.2d 295, 298 (4th Cir., 1964). When officers have physically invaded this protected area, either to seize evidence or to obtain a view of illegal activities, we have readily condemned such an invasion as violative of the Fourth Amendment. United States v. Davis, *supra*, 423 F.2d at 977; Texas v. Gonzales, 388 F.2d 145, 147–148 (5th Cir., 1968); Brock v. United States, 223 F.2d 681, 685 (5th Cir., 1955); *see* Gil v. Beto, 440 F.2d 666, 667 (5th Cir., 1971).

▇▇▇ Applying these traditional property concepts to the facts of the instant case,[2] we are convinced that Fixel's constitutional right has been violated. Although the record is unclear whether Knapp was physically encroaching on a constitutionally protected area when he made his initial observations, it is absolutely clear that Knapp unlawfully encroached on a protected area when he actually entered the backyard, seized the black shaving kit and searched it. Regardless of how suspicious the agents were that contraband was located on the premises, this fact alone does not justify a search of petitioner's premises in the absence of a search warrant.[3]

2. We emphasize that the warrant issued ostensibly authorizing the search of Fixel's apartment was not relied on by either the Florida Court of Appeals or the district court to justify the search and seizure of the heroin. Additionally, in oral argument the state conceded that the warrant was not such that it would authorize the search of the backyard.

3. While our analysis holding the search here unlawful is founded largely on property law concepts, more recent Supreme Court decisions

tend to discard such concepts when defining the individual's "right to be let alone," recognizing that they alone may be insufficient to protect this right. Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Texas v. Gonzales, *supra*, 388 F.2d at 148. We rely on these principles simply because they assist in establishing the perimeters of the Fourth Amendment guarantees as they relate to the home. Therefore, we feel it is unnecessary to discuss the more nebulous concept of whether there could be a visual in-

■■ The government argues that, even assuming that this dwelling is Fixel's home and that Fourth Amendment protections are normally afforded such places, the multi-unit character of this residence results in a relinquishment of any right of privacy relating to the backyard. Because it is located in a four-unit apartment building, the government contends that Fixel's home should not be entitled to the protection usually afforded the curtilage of a purely private residence. Like a motel or large apartment complex, this backyard is an area common to or shared with other tenants, is open to the neighbors in the adjacent building and thus not within the guarantees of the Fourth Amendment. United States v. Stroble, 431 F.2d 1273, 1276 (6th Cir., 1970); United States v. Freeman, 426 F.2d 1351, 1353 (9th Cir., 1970); Marullo v. United States, *supra,* 328 F.2d at 363; United States ex rel. Fletcher v. Wainwright, 269 F.Supp. 276, 278 (S.D.Fla., 1967). We cannot agree.

The backyard of Fixel's home was not a common passageway normally used by the building's tenants for gaining access to the apartments. United States v.

Freeman, *supra,* 426 F.2d at 1353. Nor is the backyard an area open as a corridor to salesmen or other businessmen who might approach the tenants in the course of their trade. Polk v. United States, 291 F.2d 230, 232 (9th Cir., 1961), after remand 314 F.2d 837, 838 (9th Cir., 1963). This apartment was Fixel's home, he lived there and the backyard of the building was completely removed from the street and surrounded by a chain link fence. *See* Hobson v. United States, 226 F.2d 890, 894 (8th Cir., 1955). While the enjoyment of his backyard is not as exclusive as the backyard of a purely private residence, this area is not as public or shared as the corridors, yards or other common areas of a large apartment complex or motel. Contemporary concepts of living such as multi-unit dwellings must not dilute Fixel's right to privacy any more than is absolutely required. We believe that the backyard area of Fixel's home is sufficiently removed and private in character that he could reasonably expect privacy. Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus Knapp's actual invasion into this protected area and search of the shaving kit violates the Fourth Amendment.[4]

---

trusion in violation of the Fourth Amendment in the absence of an actual encroachment on the premises.

4. The state attempts to justify the search and seizure of the shaving kit based on the "plain view" doctrine. It is argued that, when Knapp made his initial observations of petitioner in his backyard, he observed the bag and thus could seize and search it. This contention is unacceptable. As the Supreme Court delineated in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971):

" . . . [P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has re-

peatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure."

*Id.* at 468. It is undisputed that Knapp actually entered the backyard and obtained the shaving kit. Because there was no warrant authorizing such an encroachment, the search and seizure were unlawful.

An additional difficulty with the state's contention is that the law enforcement officers did not "plain view" the narcotics contained in the shaving kit, but only suspicious activities and the kit itself. The testimony at trial clearly establishes that Knapp could not identify any object that was being placed in or taken out of the bag. But in an attempt to verify his suspicions that the bag contained narcotics, Knapp entered the premises, seized the bag and searched it in contravention of petitioner's Fourth Amendment rights.

The state also urges that "exigent circumstances" were present which justify the warrantless search and seizure. It reasons that if the officers had not entered the premises and seized the shaving kit, subsequent sales of the narcotics would have depleted the evi-

Finally, we emphasize that "[w]e do not release a criminal from jail because we like to do so, or because we think it wise to do so, but only because the government has offended constitutional principle in the conduct of his case."[5] Having concluded that the search of Fixel's backyard so offends constitutional principle, we order that his petition for habeas corpus be granted.

Reversed.

AINSWORTH, Circuit Judge (dissenting):

Petitioner Robert Fixel was convicted of possession of heroin in violation of Fla.Stat. 398.03. His conviction was affirmed by the Florida Court of Appeals (3d Dist.), 256 So.2d 27 (1971), and certiorari was denied by the Florida Supreme Court. The Florida state courts, trial court, Court of Appeals and Supreme Court, found no constitutional infirmity in the conviction. Having exhausted state remedies Fixel brought this petition for habeas corpus, which was denied by the United States district judge below who found, as had the Florida state courts, that there was no violation of the Constitution in Fixel's conviction.[1]

Now the majority opinion of a panel of this Court has decreed that Fixel's conviction was unlawful because it was based on an alleged unlawful search and seizure of the contraband narcotics. Despite overwhelming evidence of Fixel's guilt, and strong evidence of probable cause to effect the seizure, the majority concludes that habeas corpus must be granted and Fixel, who has been at large on bond throughout these lengthy proceedings in the state and federal courts, must go unpunished for his crime in a misapplication of the exclusionary rule.

The pertinent facts are set forth fully, because they so emphatically support affirmance of the conviction and denial of habeas corpus. Detective Sergeant Valdes of the Sheriff's Department at Key West, Florida, applied for a search warrant to the Florida state court on April 24, 1970, for the premises 419 United Street, front downstairs apartment. His affidavit recited in part as follows:

"I have had 419 United Street, Front apartment, downstairs, (a wooden structure), Key West, Florida under surveillance for the past 30 days. During this time I have observed known narcotic pushers and users entering and leaving the premises. I have received information from a reliable informant that at this time there is a large quantity of marihuana and narcotic drugs being kept and sold on the premises. I have from a short distance observed this informant enter the premises described herein and exit these premises by way of the front entrance. Prior to this informant entering these premises, the informant was searched and was not in possession of any type of narcotic drug or marihuana. After observing this informant exit these premises I kept the informant within my sight for a short distance. I then

---

dence. How petitioner could have sold or otherwise disposed of the narcotics after the officers placed him under arrest and he was in their custody is inconceivable. After arresting the petitioner, the agents had ample opportunity to resort to the judicial process for the issuance of a warrant without fear of additional sales depleting the evidence. *See* United States v. Sokolow, 450 F.2d 324, 325 (5th Cir., 1971). *See also* United States v. Conner, 478 F.2d 1320, 1324 (7th Cir., 1973).

5. Desist v. United States, 394 U.S. 244, 258, 89 S.Ct. 1030, 1039, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting).

1. The district court (Judge Eaton) in a well-reasoned opinion concluded:

"On the basis of the facts set out in the testimony we agree with the holding of the [state] trial court that probable cause existed to justify Fixel's arrest without a warrant. It follows that the trial court did not err in denying Fixel's motion to suppress the evidence. Under the circumstances here, the arrest and the search were substantially contemporaneous. This being so the seizure of the evidentiary items was not violative of the Fourth Amendment and said items were, therefore, properly admitted at petitioner's trial."

searched this informant a second time and received a matchbox of suspected marihuana described by this informant as having been purchased within these premises. A conformatory test (Duquomoise Test) conducted on the substance within the matchbox indicated the weed substance to be marihuana. This matchbox of (tested) marihuana is being introduced before the judge as further evidence in support of the affidavit. This informant has within the past five months furnished information that has led to 10 narcotic arrests."

A search warrant was issued by the court on the same date for the premises 419 United Street, front downstairs apartment.

Detective Sergeant Valdes in company with several police officers, including Sergeant Knapp of the Sheriff's Office, then proceeded to 419 United Street to execute the warrant. On arriving at the scene they decided first to engage in additional surveillance. The property was well known to Sergeant Valdes; in fact, it was owned by his grandfather and Valdes had been there many times. It consisted of a six-apartment complex, ·made up of two houses: 419 United Street with four apartments, a front ·downstairs, a back downstairs, a front upstairs and a back upstairs apartment, and 421 United Street which consisted of two apartments, one downstairs and one upstairs. The two houses were not separated by a fence but had a common pathway between them, and there was one "big" back yard in common for the use of all the tenants of the six apartments, surrounded by a chain link fence. At the corner of United Street and Duval Street was a house 1224 Duval Street which immediately abutted the common back yard of 419 and 421 United Street. Detective Sergeant Valdes placed Sergeant Knapp in a garage at 1224 Duval Street where he could overlook the common back yard at 419 and 421 United Street. He had a good view of the yard, which was being observed at noon in clear daylight. Valdes then went to the front of 419 United Street where he maintained surveillance.

The surveillance of the police officers lasted about 45 minutes. During that time Detective Sergeant Valdes saw five or six people enter separately from time to time in the front downstairs apartment at 419 United Street (the one for which he held a search warrant). He also observed the defendant Fixel come out of the front of the apartment on several occasions and walk through the common pathway between the two apartment buildings toward the back yard. Fixel was then picked up by the surveillance of Sergeant Knapp who saw him on three occasions go to a place in the back yard, remove a black shaving kit from a rubbish pile under a tree and take something from it each time. Sergeant Knapp could not see what was being taken from the kit, but he would have been more naive than we should expect of a prudent policeman if he had not realized under all of the pertinent circumstances what was occurring. The officers did not enter the property or yard at any time during the surveillance. When Valdes returned to the garage Knapp told him what he had observed. Knapp then walked around to the front of 419, thence down the common pathway into the common back yard, secured the black kit, and joined Valdes who had just entered the front downstairs apartment and executed the search warrant. The defendant Fixel was found in the apartment and arrested with three other persons. A search was made of the apartment but no contraband was found. The shaving kit was found to contain eleven packets of heroin.

The State of Florida does not contend that the seizure of contraband narcotics in the yard of the apartment complex was authorized by the original search warrant. But it urges that the arresting officers acted with probable cause, that the seizure was incident to the arrest, that the common yard of the six-apartment complex was not protected by the Fourth Amendment against illegal activity conducted in plain view of the

police, and therefore that the seizure was lawful. Fixel likewise had no reasonable expectation of privacy of objects hidden in the rubbish of a common back yard, open to the use of all the tenants of the complex.

The majority opinion concedes that there was probable cause for the initial arrest of Fixel. In footnote 1 of the majority opinion we find the following statement:

> "Probable cause for the initial arrest of petitioner Fixel was established. An informer told law enforcement officials that a large quantity of narcotics was being sold on these premises. Using this same informer, the officers conducted a controlled purchase of marijuana, although it is not stated when the purchase occurred or if it was from Fixel. Furthermore, known traffickers in narcotics had been seen entering and leaving these premises. But most importantly, the officers observed the extremely suspicious actions of petitioner making trips to the backyard of his home and concealing the shaving kit there on the day of the arrest. In light of these circumstances, we think the agents could reasonably believe that a crime had been or was being committed. Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Gonzalez-Perez, 426 F.2d 1283, 1286 (5th Cir., 1970); Johnson v. Middlebrooks, 383 F.2d 386, 387 (5th Cir., 1967)."

But there likewise was probable cause for the seizure of the heroin found in the shaving kit in the common back yard. When all of the circumstances are considered, the seizure was not unreasonable within the intendment of the Fourth Amendment. The apartment had been under surveillance for 30 days and known narcotics pushers and users had been observed entering the premises. A reliable informant stated that there was a large quantity of narcotics being kept and sold on the premises. The informant made a controlled purchase of marihuana in the premises under supervision of the police officers. Then on a surveillance of the common back yard[2] of the apartment complex, immediately preceding the serving of the search warrant, the police had ample reason to believe from their own observation that a felony was being committed in their presence and to act accordingly. *See* Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L. Ed.2d 1067 (1968); Walker v. Beto, 5 Cir., 1971, 437 F.2d 1018, 1019; United States v. Salvo, 5 Cir., 1971, 447 F.2d 474, 475.

It was not necessary under these circumstances for the police officers to secure a search warrant for, as the Supreme Court said in Cooper v. State of California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967):

> "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' United States v. Rabinowitz, 339 U.S. 56, 66, 70 S. Ct. 430, 435, 94 L.Ed. 653."

Probable cause exists if the facts known to the officer cause him as a prudent man to believe that an offense has been committed; however, evidence sufficient to establish guilt is not required. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). *See also* Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L. Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 164, 69 S.Ct. 1302, 1305, 93 L.Ed. 1879 (1949); United States v. Lipscomb, 5 Cir., 1970, 435 F. 2d 795, 798 (the "prudent" man who "reasonably" believes the arrested per-

---

2. Compare the following cases relative to search of common areas, which, though not precisely in point, are applicable in principle: United States v. Stroble, 6 Cir., 1970, 431 F.2d 1273; United States v. Freeman, 9 Cir., 1970, 426 F.2d 1351; Marullo v. United States, 5 Cir., 1964, 328 F.2d 361.

son has committed an offense); United States v. Skinner, 8 Cir., 1969, 412 F.2d 98, 101 (probable cause turns upon the facts of the particular case).[3]

Reasonableness is the touchstone, as the Supreme Court and this Court have often pointed out. "The Fourth Amendment does not denounce all searches and seizures, but only such as are unreasonable." Carroll v. United States, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925). Thus "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). And as we said, for example, in United States v. Ragsdale, 5 Cir., 1972, 470 F.2d 24, 30:

> "Reasonableness—as its more usual concomitant, probable cause—is founded not on technicalities, but on 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"

This is a slim case, indeed, to apply the exclusionary rule when the facts as recited so clearly show that the police had probable cause to seize the contraband narcotics. My strongly held belief is that the seizure here was reasonable under the facts and circumstances. No difficult question of law is presented. The case should have been resolved on

its facts, which, as I view it, as did the several Florida state courts and the federal district judge below, required dismissal of Fixel's petition of habeas corpus.

3. The majority's reliance on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is misplaced. Mr. Justice Stewart, author of the opinion, was careful to point out that Coolidge "is not a case involving contraband or stolen goods or objects dangerous in themselves." (403 U.S. at 472.)

It should also be emphasized that the quoted language of the Coolidge opinion (403 U.S. at 468) in the majority opinion herein, is found in the Supreme Court Reporter under key numbers 23-25 and the syllabi thereunder indicate the following:

"Per Mr. Justice Stewart with three Justices concurring and one Justice concurring in the judgment." (Mr. Justice Harlan who concurred in the judgment declined to concur in that part of the opinion quoted by the majority in the present case.)

Thus it appears that less than a majority of the Court concurred in the cited language.

Nevertheless, we disagree with the majority in the present case that there were no "exigent circumstances" to justify the seizure. The majority concludes that it is "inconceivable" that Fixel could have disposed of the contraband narcotics while the police were obtaining another search warrant, since Fixel was then under arrest. Whether Fixel could have been held without the contemporaneous seizure of the narcotics, whether he was in league with others who might make off with the contraband, and whether the police should believe as a practical matter that the contraband would remain in the kit under the tree, are all subjects of speculation, as is the majority's view, but certainly not "inconceivable." The officers had a duty to preserve the evidence and the taking of prompt action by them was amply justified and reasonable under the circumstances.