# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2023

Lyle W. Cayce
Clerk

No. 19-40904

RICARDO SAUCEDA,

*Plaintiff—Appellant*,

*versus*

CITY OF SAN BENITO, TEXAS; HECTOR LOPEZ, *Individually and in his official capacity as a Peace Officer for the* CITY OF SAN BENITO, TEXAS POLICE DEPARTMENT,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:17-CV-135

Before RICHMAN, *Chief Judge*, and DENNIS and HAYNES, *Circuit Judges*.

JAMES L. DENNIS, *Circuit Judge*:

On June 20, 2015, San Benito police officer Hector Lopez approached Ricardo Sauceda while Sauceda was standing in the front yard of his property. Lopez was responding to a call from Marco Cortez, a relative of Sauceda's neighbors, who alleged that Sauceda had made rude comments and gestures toward him from across the street. Lopez spoke to Sauceda and demanded that he produce identification. Sauceda—speaking to Lopez from behind the

chain-link fence that enclosed his property—declined and turned to go inside his house. Undeterred, Lopez pushed open the gate into Sauceda's yard. Sauceda told Lopez he needed a warrant and pushed back. Within seconds, Lopez broke through, telling Sauceda, "I am coming after you, brother," and, "You're going to come with me, brother." Lopez grabbed Sauceda and the parties physically struggled, with the fifty-year-old, disabled Sauceda brought to the ground. At one point, Lopez took out his baton. Sauceda claims he hit him with it; video evidence is inconclusive. Sauceda was taken into custody and, after receiving medical attention for his injuries, was charged with several offenses. All were dismissed. He now seeks recompense from Defendants Lopez and the City of San Benito for false arrest and excessive force.[1]

The district court granted summary judgment in favor of Defendants. Contrary to the district court, we conclude that Sauceda has raised genuine issues of material fact as to his claim for false arrest against Lopez. We therefore REVERSE and REMAND with respect to the false arrest claim. We otherwise AFFIRM the district court.

## I. Factual and Procedural Background

Sauceda was fifty years old and disabled at the time of the events in question. Sauceda and his neighbors, the Cortez family, had a fraught history. Sauceda had lodged numerous complaints against the Cortez family to the San Benito Police Department.

On June 20, 2015, the Cortez family was having a party across the street from Sauceda's home. Marco Cortez alleged that Sauceda made lewd gestures and comments directed toward him. Cortez recorded three videos

---

[1] Sauceda also sued under the Texas Tort Claims Act. Those claims have been abandoned on appeal.

of Sauceda on his cellphone, but deleted one of them "because it didn't show anything." The other two videos show Sauceda standing on his property, though they lack audio and do not clearly show what gestures (if any) Sauceda was making.

After recording Sauceda, Cortez called the police. Officer Lopez arrived and spoke to Cortez, who described his allegations against Sauceda and showed Lopez the videos he recorded. Lopez then crossed the street and addressed Sauceda, who was standing behind a gated fence that surrounded his property. Lopez testified that at that time he had not yet decided to arrest Sauceda for disorderly conduct.

Lopez's body camera recorded their interaction. Sauceda denied the accusations against him, stated that he previously filed police reports against the grandfather of the Cortez family, and suggested that the Cortezes had called the police against him in retaliation. Lopez then asked Sauceda for his driver's license. Sauceda declined to produce it, stating that he did not wish to file a report and was just minding his own business. Lopez told Sauceda that he would be making a report and needed Sauceda's information. Sauceda told him, "I'm not going to give you anything," and began to walk away. Lopez testified that it was at this point that he decided to arrest Sauceda. However, as we shall explain later in this opinion, the mere refusal to identify oneself to a police officer is not a crime in Texas if the person has not lawfully been placed under arrest. *See* Tex. Penal Code § 38.02(a).

As Sauceda walked a few steps toward his house, Lopez began to open Sauceda's gate. Sauceda noticed what Lopez was doing, turned back, and attempted to hold the gate closed. He told Lopez, "you don't get in my house without a search warrant, no, sir." Lopez responded, "I'm going after *you*, brother," and forced his way into Sauceda's yard. Lopez testified that he "got a hold of [Sauceda's] left hand" before Sauceda "pulled away." His

body camera footage showed Sauceda telling Lopez "don't touch me" as he pulled out of Lopez's grip. Lopez continued to pursue Sauceda further into the yard, telling him, "You're going to come with me, brother," and saying over his radio, "I got one resisting arrest." Lopez did not inform Sauceda why he was being arrested. Lopez then grabbed Sauceda a second time. It is unclear if Lopez jerked Sauceda forward or if Sauceda lost his balance, but Sauceda immediately fell to the ground.

Lopez attempted to handcuff Sauceda. As Sauceda lay on his back, Lopez stood over him and pinned him with his legs. While in this position, Lopez drew and extended his baton with his left hand. Sauceda testified that Lopez struck him with the baton. Lopez testified that he did not. Lopez's body camera footage does not show precisely what Lopez did with the baton. During the struggle, someone placed the palm side of their right hand directly over the camera, obscuring part of the relevant footage. During the arrest, Cortez began to make his own recording on his cellphone. Cortez's video shows Sauceda lying on his back and an object falling from his pocket. Several seconds later, Lopez extends his baton by raising it up to head level with his left hand and making a quick, downward swing in a counterclockwise arc. It is difficult to tell whether the swing made contact with Sauceda, or whether it was intended to make such contact. At no point in either video can the baton be seen or heard coming into contact with Sauceda, and Sauceda said nothing on the recording about being struck with the baton and does not cry out as if struck.

Lopez's body camera captured repeated outcries from both Sauceda and Sauceda's wife begging for Lopez to leave him alone. They repeatedly told Lopez that he was hurting Sauceda because he was disabled and had a bad back. After he was handcuffed, Sauceda struggled to stand and asked for an ambulance. Lopez told him to give him his hand. Sauceda said he would get up himself. Lopez again told Sauceda "Give me your hand" and

threatened to "spray" him if he did not. Sauceda said, "I think I hurt my back for real." Lopez replied, "I don't care, brother." By this point, other officers had arrived on the scene. Sauceda continued to ask for an ambulance as he was moved to the police car and was told, "once we get to the station." Eventually, a different officer agreed to call an ambulance.

Sauceda was told that he was under arrest and read his rights. He was taken by ambulance to Harlingen Medical Center, where he was diagnosed with a cervical sprain, a back sprain, and a contusion. Once released from the hospital, he was taken to the police station for booking. He was charged with disorderly conduct, failure to identify, resisting arrest, and assault on a public servant. The Cameron County District Attorney dismissed all charges against Sauceda in February 2017. Lopez was not disciplined.

## II. Discussion

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing [summary judgment].'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). At the same time, we do not consider a party's description of the facts if it is so "blatantly contradicted" by video evidence "that no reasonable jury could believe it." *Id.* at 380.

Lopez contends that even if a fact issue exists about whether he arrested Sauceda unlawfully or used excessive force, he is entitled to qualified immunity. To evaluate whether a government official is entitled to qualified

immunity, "[w]e must determine (1) 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right' and (2) 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018) (ellipsis omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "Law is 'clearly established' for these purposes only if 'the contours of the right were sufficiently clear that a reasonable official would understand that what he was doing violated that right.'" *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018) (brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Darden*, 880 F.3d at 727 (quoting *Hanks v. Rogers*, 853 F.3d 738, 746-47 (5th Cir. 2017)).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014).

In addition to suing Lopez, Sauceda also sued the City of San Benito. "To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  "An official policy may take 'various forms,' including 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Fennell v. Marion Independent School Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (quoting *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009)).  The plaintiff must show that the policy "violated federal law[,] authorized or directed the deprivation of federal rights[,] or … was adopted

or maintained by the municipality's policymakers 'with "deliberate indifference" as to its known or obvious consequences[.]'" *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997)).  The plaintiff must also show that the policymaker had "actual or constructive knowledge of the official policy or custom."  *Fennell*, 804 F.3d at 413 (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).  Unlike individual officers, municipalities may not assert qualified immunity.  *See Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001); *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994).

### A.    Sauceda's Evidentiary Arguments

We begin with Sauceda's evidentiary arguments.  Sauceda contends that the district court erred by denying his objections, on hearsay grounds, to (1) Cortez's unsworn statement, (2) Lopez's police report (including a summary of Cortez's statements to Lopez, which Sauceda contends are hearsay-within-hearsay), and (3) the report of Defendants' expert, Margo Frasier.

On appellate review of an order granting or denying summary judgment, this court will reverse only if the error "affects 'substantial rights.'"  *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 286 (5th Cir. 2020) (quoting Fed. R. Civ. P. 61).  The party asserting error "bears the burden of proving such prejudice."  *Id.*  In this case, the district court's opinion and order granting summary judgment did not cite any of the documents challenged by Sauceda.  Likewise, our conclusion on the merits, which we address in the following sections, does not depend on whether or not the challenged documents are deemed to be included in the summary judgment record.  Thus, if there was any error by the district court in overruling Sauceda's objections, it was harmless, and we need not explore whether the

documents were in fact competent summary judgment evidence. With that, we proceed to the merits.

### B.    False Arrest

### 1.    Whether Lopez had lawful grounds to arrest Sauceda

The Fourth Amendment, incorporated against the States via the Fourteenth Amendment's Due Process Clause, protects the right of persons to be secure in their "persons, houses, papers, and effects . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. "A warrantless arrest must be based on 'probable cause.'" *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)). "Probable cause to arrest exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *United States v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992) (cleaned up; alteration added). "These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

In addition to the probable cause requirement, the Fourth Amendment limits an officer's ability to enter a private dwelling to make a warrantless arrest. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.") (internal quotation marks omitted) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). As the Supreme Court stated more than six decades ago: "The Fourth Amendment, and the personal right which it secures, have a long history. At the very core stands the right of a man to retreat into his own

No. 19-40904

home and there be free from unreasonable government intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). *See also United States v. United States District Court for the Eastern District of Michigan*, 407 U.S. 297, 313 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."). Therefore, absent an exception to the warrant requirement, warrantless arrests in the home are prohibited by the Fourth Amendment. *See Lange v. California*, 141 S. Ct. 2011, 2017 (2021); *Brigham City*, 547 U.S. at 403. And the "curtilage" of the home—that is, "the area 'immediately surrounding and associated with the home'"—is "'part of the home itself for Fourth Amendment purposes.'" *Florida v. Jardines*, 133 S. Ct. 1409, 1414-15 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

The district court held, and the parties do not dispute, that Lopez arrested Sauceda in his front yard without a warrant. Defendants have identified five offenses for which they claim Lopez could have lawfully arrested Sauceda: (i) disorderly conduct;[2] (ii) failure to identify;[3] (iii) evading

---

[2] A person commits the offense of disorderly conduct in Texas "if he intentionally or knowingly: (1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace; (2) makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace; … [or] (4) abuses or threatens a person in a public place in an obviously offensive manner." Tex. Penal Code § 42.01(a). Texas courts have held that these provisions apply only to "fighting words or acts." *Ross v. State*, 802 S.W.2d 308, 314-15 (Tex.App.—Dallas 1990, no pet.); *see generally Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942) (recognizing the State's authority, consistent with the First Amendment, to proscribe "fighting words").

[3] A person commits the offense of failure to identify in Texas "if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information." Penal Code § 38.02(a).

No. 19-40904

arrest or detention;[4] (iv) resisting arrest;[5] and (v) assault on a public servant.[6] We examine each theory in turn.

### i.     Disorderly conduct

Lopez claims that Sauceda's allegedly vulgar language and gestures toward Cortez constituted disorderly conduct under Texas law, furnishing probable cause to arrest him.

We need not decide whether Sauceda's actions—as described by Cortez—fit the statutory definition of disorderly conduct under § 42.01(a), or whether an officer would have probable cause to make an arrest where the alleged misconduct occurred outside of the officer's presence, was based on an uncorroborated statement by one witness, and was immediately denied by the alleged offender. It suffices to conclude that that, even if probable cause existed to arrest Sauceda for disorderly conduct, Lopez lacked authority to enter the curtilage of Sauceda's home to arrest him for this purpose.

---

[4] A person commits the offense of evading arrest in Texas "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Tex. Penal Code § 38.02(a).

[5] A person commits the offense of resisting arrest in Texas "if he intentionally prevents or obstructs a person he knows is a peace officer … from effecting an arrest … by using force against the peace officer[.]" In the context of determining whether probable cause exists to arrest an individual for resisting arrest, "[i]t is no defense … that the arrest … was unlawful." Tex. Penal Code § 38.03(b).

[6] A person commits assault in Texas if he "(1) intentionally, knowingly, or recklessly causes bodily injury to another … ; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as provocative or offensive." Tex. Penal Code § 22.01(a). Such an offense is a third degree felony if "committed against … a person the actors knows is a public servant while the public servant is lawfully discharging an official duty[.]" *Id.* § 22.01(b)(1).

No. 19-40904

To the extent Lopez contends that Sauceda's front yard was not part of the "home" for Fourth Amendment purposes, our review of the summary judgment record leads us to reject that contention. The videos clearly show what appears to be a single-family home on a normal-sized lot in a residential neighborhood. The sides of the lot that are visible are enclosed by a chain-link fence that is almost as tall as an average adult. There are also bushes behind the fence that obscure parts of the yard from street view. The only apparent access point is a gate, which Sauceda was seen closing in one of the videos, and which was not opened again until Lopez forced his way through it.

"[I]t is plain that the fence surrounding the residence serves to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house." *United States v. Dunn*, 480 U.S. 294, 302 (1987). A case factually similar to this one was *Fixel v. Wainwright*, 492 F.2d 480 (5th Cir. 1974), in which our Court held that an apartment's backyard, which was inaccessible to others and "completely removed from the street and surrounded by a chain link fence," was "sufficiently removed and private in character" to constitute part of the curtilage. *Id.* at 484. As the Supreme Court has noted, "for most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage—as the area around the home to which the activity of home life extends—is a familiar one easily understood from our daily experience." *Oliver*, 466 U.S. at 182 n.12. In this case, Sauceda has, at minimum, raised genuine issues of fact as to his yard's curtilage status.

Because Lopez entered the curtilage of Sauceda's home without a warrant, we must next determine whether an exception to the warrant requirement applies. *See Lange*, 141 S. Ct. at 2017; *Brigham*, 547 U.S. at 403. Relying on what is commonly known as the hot pursuit exception, Lopez

11

asserts that he acted lawfully in attempting to stop Sauceda from walking back into his house.

Under the hot pursuit exception, "the pursuit of a suspect [is an] exigent circumstance[] that may excuse an otherwise unconstitutional intrusion into a residence." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001). But for the exception to apply, the suspect must be retreating from a "public place" to a "private place." *United States v. Santana*, 427 U.S. 38, 43 (1976); *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995); *United States v. Varkonyi*, 645 F.2d 453, 457 (5th Cir. Unit A 1981). A suspect's movement from one point inside his home to another cannot trigger this exception. *See Hogan v. Cunningham*, 722 F.3d 725, 733 (2013) (holding that "[o]fficers [could not] justify their warrantless entry based upon their hot pursuit" because the suspect "did not retreat into his apartment from a public place" and "was fully inside his apartment at all times"). And that is all Sauceda attempted to do here: move from the curtilage of his property—a part of the home, *Jardines*, 133 S. Ct. at 1414-15—to another point inside the home.

Lopez and the district court relied on language in *Varkonyi* stating that "law enforcement officers may enter upon private property to make warrantless arrests, provided the arrest is based on probable cause and the person is in 'plain view.'" 645 F.2d at 457 (citing *Santana*, 427 U.S. at 42-43; *Hester v. United States*, 265 U.S. 57, 59 (1924)). In our view, Lopez and the district court read this passage too literally. A suspect might be in "plain view" of the officers if he stands by an open window or on an upper balcony—surely this would not authorize the police to dispense with the warrant requirement if they wish to pass through the front door to arrest

him.[7] We think the same is true when a suspect stands within the curtilage of their house from behind a closed gate, albeit visible to the public.

The better way to interpret *Varkonyi*'s reference to "plain view" is as part of its overall discussion of what constitutes a "public place"; that is, "an[] area where there is no expectation of privacy." 645 F.2d at 457. As *Varkonyi* held, an area may technically be "private property," yet be a "public place" for Fourth Amendment purposes. *See id.* at 457-58 (holding that a private scrap metal yard located behind a fence but with its gate open was a public place); *see also Santana*, 427 U.S. at 42-43 (holding that the threshold of an open doorway was a public place); *Hester*, 265 U.S. at 58-59 (holding that private land near the home and accessible to federal agents was a public place). However, six years after *Varkonyi* was decided, the Supreme Court clarified that the "steps taken … to protect [an] area from observation by people passing by" are just one of several factors used to determine whether an area constitutes part of the curtilage protected by the Fourth Amendment. *Dunn*, 480 U.S. at 301. Notably, courts must also consider "whether the area is included within an enclosure surrounding the home." *Id.* In *Santana*, *Hester*, and *Varkonyi*, the places in question were either unenclosed or accessible through an open door or gate. Here, by contrast, Sauceda's yard was fenced off *and* his gate was closed. This case is therefore much closer to *Fixel* than *Varkonyi*. *See Fixel*, 492 F.2d at 484.

Because the hot pursuit exception does not apply (and because Lopez has not identified any other applicable exception to the warrant requirement),

---

[7] Of course, in some such situations—such as a suspect firing a rifle from his gated yard into the street—the police *are* justified in making a warrantless entry and arrest. But those cases do not rely on the hot pursuit exception; they rely on other exceptions to the warrant requirement. For example, in the hypothetical just described, the officers' entry would be justified by the "immediate safety risks to officers and others." *Jones*, 239 F.3d at 720.

Sauceda has raised genuine issues of fact as to whether Lopez had authority to enter his property to arrest him for disorderly conduct.

### ii.     Failure to identify

Defendants' failure-to-identify argument can be dismissed quickly. A person's mere refusal to identify themselves to a police officer is not a crime under § 38.02 unless that person has already been "lawfully arrested." Tex. Penal Code § 38.02(a). Such a refusal can never supply probable cause to make the initial arrest. *See Crutsinger v. State*, 206 S.W.3d 607, 610 (Tex. Crim. App. 2006) ("When appellant refused to give Garcia his name, he was not under arrest. Therefore, [§ 38.02(a)] does not apply."). Here, Sauceda had not yet been placed under arrest when he declined to produce his identification; and even if he had, Defendants would still have to account for whether *that* arrest was lawful.[8] In any event, our conclusion in the previous section that Lopez lacked authority to make a warrantless entry onto Sauceda's property applies with equal force to Lopez's argument that he could have entered the property to arrest Sauceda for failure to identify. *See* Part II.B.1.i, *supra*.

### iii.     Evading arrest or detention

Defendants assert that when Sauceda walked from his yard back towards his home, he committed the offense of evading arrest or detention. But as discussed above, Lopez did not have grounds to enter Sauceda's curtilage without a warrant, so an arrest for evading arrest or detention could not lawfully be made. *See* Part II.B.1.i, *supra*. Moreover, Sauceda has at least

---

[8] Defendants' argument that Sauceda's failure to provide identification was tantamount to providing false or fictitious information does not require an extended answer. The Texas Penal Code separately addresses individuals who refuse to identify themselves and those who provide false identification. Tex. Penal Code § 38.02(a), (b). In the former case, a lawful arrest is always required. *See id.*

raised a genuine issue of fact as to whether Lopez possessed probable cause to arrest him for this offense. Specifically, there is a genuine dispute as to whether, during the few seconds in which Sauceda walked away, Lopez was "attempting … to or arrest or detain" him. TEX. PENAL CODE § 38.02(a). Sauceda specifically denied that Lopez ever told him he was under arrest. And nothing in the record indicates that Lopez said or did anything, at that time, to communicate that Sauceda was not free to leave. Although Lopez told Sauceda, "I am coming after you, brother"—which, according to Lopez, notified Sauceda that he was indeed under arrest—body camera footage shows that Lopez was no longer walking away when these words were spoken. Thus, Lopez could not have lawfully arrested Sauceda for evading arrest or detention.

### iv.    Resisting arrest

The district court concluded that Lopez had probable cause to arrest Sauceda for resisting arrest after Sauceda "batted [Lopez's] hands away" as Lopez pursued him into the yard. We agree that Lopez had the requisite probable cause to arrest Sauceda *once Sauceda began resisting*. But that does not end our inquiry, for—as we explain below—a reasonable factfinder could still find that Lopez made an unlawful arrest *before* Sauceda's resistance.

"Supreme Court and Fifth Circuit caselaw makes clear that a Fourth Amendment seizure occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority to which an individual submits." *Arnold v. Williams*, 979 F.3d 262, 268 (2020). In order for such a seizure to constitute an arrest, the circumstances must be such that "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with a formal arrest." *Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015) (quoting *United States v. Corral-Franco*, 848 F.2d 536,

540 (5th Cir. 1988)).  An arrest may be "effected by the slightest application of physical force"; "the mere grasping or application of physical force with lawful authority, whether or not it succeed[s] in subduing the arrestee, [is] sufficient."  *California v. Hodari D.*, 499 U.S. 621, 624, 625 (1991); *see also Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) ("'[M]erely touching' [is] sufficient to constitute an arrest") (quoting *Hodari D.*, 499 U.S. at 625).  "Put another way, an officer's application of physical force to the body of a person 'for the purpose of arresting him' [is] itself an arrest—not an *attempted* arrest—even if the person [does] not yield."  *Torres*, 141 S. Ct. at 995 (emphasis in original; internal quotation marks omitted) (quoting *Hodari D.*, 499 U.S. at 624).

Here, Lopez reached for Sauceda immediately after opening the gate into his yard.  His body camera does not clearly show whether Lopez made physical contact with Sauceda.  But Lopez testified that he "got a hold of [Sauceda's] left hand."  That is enough to constitute a seizure under the Fourth Amendment.  *See Torres*, 141 S. Ct. at 995 ("As applied to a person, 'the word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.'  Then, as now, an ordinary user of the English language could remark: 'She seized the purse-snatcher, but he broke out of her grasp.'") (brackets and internal citations omitted) (quoting *Hodari D.*, 499 U.S. at 626); *compare Arnold*, 979 F.3d at 268 (holding that a seizure did not occur where the officer unsuccessfully attempted to grab the suspect).  And Lopez's seizure of Sauceda was an *arrest* under all of the attending circumstances.  That is because, as the district court found, Lopez's words— "I am going after *you*, brother," spoken just seconds before grabbing Sauceda's hand—reasonably indicated to Sauceda that he was being arrested.  Therefore, a rational factfinder could determine that Lopez arrested Sauceda before Sauceda applied any resistance.

No. 19-40904

Any arrest that Lopez made when he opened Sauceda's gate and grabbed his hand could not have been lawful. As we have explained above, Lopez had no legal justification to enter Sauceda's property without a warrant; additionally, he lacked probable cause to arrest Sauceda for failure-to-identify or evading arrest. Thus, a jury could find that when Sauceda "resisted" by pulling out of Lopez's grip, he had *already* been placed under an unlawful arrest. Even if an unlawful arrest becomes lawful moments later by virtue of the arrestee's resistance, there is no reason why the officer cannot be held liable for the unlawful part.[9] For that reason, the district court erred in granting summary judgment on the grounds that Lopez had probable cause to arrest Sauceda for resisting arrest.

### v.    Assault on a public servant

Finally, Defendants aver that Lopez had probable cause to arrest Sauceda for assault on a public servant. As discussed in the immediately preceding section, however, Sauceda was already "arrested" when Lopez opened the gate and grabbed his hand. Lopez's body camera footage shows that Sauceda did not do anything resembling an assault before this arrest occurred. Therefore, summary judgment cannot be granted on this ground.

\* \* \*

For these reasons, we conclude that Sauceda has raised genuine issues of material fact as to whether Lopez had lawful authority to arrest him.

---

[9] Even nominal damages are recoverable in a false arrest action under 42 U.S.C. § 1983. *See Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994). And, in some cases, a § 1983 plaintiff awarded nominal damages will be entitled to attorney fees as well. *See* 42 U.S.C. § 1988; *Grisham v. City of Fort Worth*, 837 F.3d 564 (5th Cir. 2016).

### 2.    Qualified Immunity

Because the district court held that Lopez had probable cause to arrest Sauceda, it concluded that Sauceda had necessarily failed to overcome Lopez's qualified immunity defense. However, as we have just noted, there are genuine issues of material fact as to the lawfulness of Sauceda's arrest. We must therefore consider whether the summary judgment record could show that "any reasonable official in the [Lopez's] shoes would have understood that he was violating" Sauceda's constitutional rights in light of clearly established law. *Plumhoff*, 572 U.S. at 778; *see Darden*, 880 F.3d at 727.

Lopez's argument that he is entitled to qualified immunity is essentially duplicative of his argument that his arrest of Sauceda was supported by probable cause. The district court similarly granted Lopez qualified immunity based on its finding that he had probable cause to arrest Sauceda for resisting arrest. Yet having found that the acts constituting resisting arrest or assault on a public official occurred *after* the arrest, and viewing the facts in the light most favorable to Sauceda, Lopez did not have probable cause to enter Sauceda's property to execute a warrantless arrest. *Washington v. Salazar*, 747 F. App'x 211 (5th Cir. 2018); *see also Darden*, 880 F.3d at 727 (at the summary judgment stage we must "view the facts in the light most favorable to the nonmoving party" even in context of qualified immunity). Because Lopez did not have probable cause to arrest Sauceda for resisting arrest, the district court's provision of qualified immunity to Lopez on this basis must be reversed. Qualified immunity may nonetheless protect Lopez's conduct, however, if "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer[] possessed.". *Salazar*, 747 F. App'x at 215. We thus remand to the district court to determine whether Lopez's conduct was objectively reasonable in these circumstances.

## C.     Excessive Force

"The Fourth Amendment's protection against unreasonable search and seizure requires that officers refrain from using excessive force, that is, more force than is reasonably necessary, when effectuating an arrest." *United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004). "It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Id.* (quoting *Bazan v. Hidalgo County,* 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted)). "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

The district court held that while Sauceda was unquestionably injured during his interaction with Lopez, Lopez's use of force was objectively reasonable considering Sauceda's resistance. In making this determination, the district court discredited Sauceda's testimony that Lopez hit him with a baton as contradicted by the video footage of the interaction, which "unambiguously establishe[d]" that Lopez did not strike Sauceda with a baton. In the absence of competent evidence that Lopez struck Sauceda with a baton, the district court concluded that Lopez did not use force that was objectively unreasonable in light of Sauceda's resistance. We agree.

The video footage of the interaction between Lopez and Sauceda does not provide any evidence that Lopez struck Sauceda with his baton, and as such, the district court did not err in discrediting Sauceda's testimony to the contrary. *See Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) ("when there is a videotape that discredits the non-movant's description of facts, we will consider the facts in the light

19

depicted by the videotape") (cleaned up).   Sauceda did not present any further competent summary judgment evidence demonstrating that Lopez struck Sauceda with a baton,[10] and Sauceda does not argue that Lopez's use of force would have been unreasonable in the absence of a baton strike. Because the district court properly discredited Sauceda's evidence regarding Lopez's use of the baton, the district court did not err in finding no genuine issue of material fact as to whether Lopez used excessive force that was objectively unreasonable under the circumstances.   We affirm the district court's dismissal of Sauceda's excessive force claim.

### D.    Municipal Liability

We similarly affirm the district court with respect to Sauceda's municipal liability claim against the City.   Sauceda has failed to show that Lopez's allegedly unconstitutional acts were based on any official policy or widespread pattern of conduct of the City.   At most, Sauceda points to: (i) the affirmative deposition responses of Lieutenant Martin Morales, Jr.—the San Benito Chief of Police at the time of Sauceda's arrest—when Morales was asked whether it was "city policy" to arrest individuals who refuse to provide a driver's license upon request, and (ii) Lopez's affirmative deposition responses when asked whether he was following City "policy" in arresting Sauceda.   This is insufficient.   Sauceda conceded below that the "relevant policymaker" was the San Benito City Commission, not Morales.

---

[10] Defendants correctly note that Perez's legal conclusion that Officer Lopez used excessive force is irrelevant and entitled to no weight, as "experts are not permitted to offer legal conclusions." *United States v. Oti*, 872 F.3d 678, 691-92 (5th Cr. 2017).   Sauceda also claims that the court failed to properly credit his submitted affidavit from another neighbor, Jaime Salas, who stated that he witnessed the arrest, and that Lopez "barge[d] into Sauceda's property and sw[u]ng his baton." However, even if this evidence were assumed to be true in its entirety, it does not allege that Lopez actually hit or even attempted to hit Sauceda with his baton, and thus does not support a claim of excessive force.

No. 19-40904

And there is no record evidence that a policy to arrest individuals for failing to produce identification was adopted or promulgated by the City Commission. Nor has Sauceda produced evidence of "a widespread practice that [was] so common and well-settled as to constitute a custom that fairly represent[ed] municipal policy." *Fennell*, 804 F.3d at 413 (cleaned up). A solitary instance of violating Sauceda's rights cannot confer liability on the City. *See Sanchez v. Young Cty.*, Texas, 866 F.3d 274, 280 (5th Cir. 2017), *cert. denied*, 139 S. Ct. 126 (2018) ("A municipality is almost never liable for an isolated unconstitutional action on the part of an employee.").

Sauceda alternatively contends that the City is liable for Officer Lopez's actions because it failed to provide him with sufficient training and adequate supervision. Municipal liability for failure to train or supervise attaches when the failure "reflects a municipality's deliberate or conscious choice" such that the choice is a policy. *Canton v. Harris,* 489 U.S. 378, 389 (1989) (internal quotation marks omitted). For this liability to attach, Sauceda must also show that (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *Canton,* 489 U.S. at 385–87).

It is not enough that the failure to supervise be due to negligence or ineptitude on the part of the City; Sauceda's burden is to prove it was a result of deliberate indifference. *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."). The fact that this was an isolated incident raises that burden further because the "single-incident method of proving deliberate indifference" is "generally reserved" for cases

21

in which "no training whatsoever" occurred. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 625 (5th Cir. 2018) (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)).  Here, Sauceda did not produce evidence that could establish that Lopez received *no* training, that his training was intentionally or deliberately inadequate, or that the City had a policy endorsing Officer Lopez's actions.  Because of this, the district court found correctly that Sauceda failed to raise a genuine issue of material fact supporting municipal liability.

### E.     Defendants' Untimely Motion for Summary Judgment

Finally, we consider Sauceda's argument that the district court failed to comply with Rule 6(b) by considering Defendants' untimely motion for summary judgment.  Sauceda argues that the district court erred by considering Defendants' motion for summary judgment even though it was filed late without leave.  Defendants did not file their motion for summary judgment until four days past the deadline given by the district court.  The district court then issued an order *sua sponte* taking notice of the motion for summary judgment and, without explanation, considering it timely filed.

Federal Rule of Civil Procedure 6(b)(1) allows the court to extend the time within which an act must be done for good cause, but explicitly distinguishes between extensions to time made *before* its expiration (which the court can make with or without motion or notice) and extensions to time made *after* its expiration (which the court can make only on motion).  Fed. R. Civ. P. 6(b)(1).  Further, a court may only extend the time for filings after a deadline has expired "if the party failed to act because of excusable neglect." *Id.*  The Defendants did not move the court for an extension of time before this retroactive extension was granted and failed to provide any explanation for the delay in filing.  Therefore, they have not shown good cause for the delay, let alone demonstrated excusable neglect, and the district court erred

22

in *sua sponte* extending the deadline for Defendants' motion for summary judgment.

However, we hold that this error was harmless. Sauceda has not identified or shown any way in which he was prejudiced by this error and the four-day delay that resulted from the acceptance of the late filing. *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (no reversible error where "delay was brief, and there is no suggestion that [untimely filing] had a material effect on the proceedings"). Moreover, Sauceda had notice of and access to the motion for summary judgment, in the form in which it would later be filed, when the Defendants attached it as an exhibit to their Motion for Leave to File a Motion for Summary Judgment in excess of the district court's page limit. This notice and Sauceda's failure to identify how the error prejudiced him render the error harmless.

\* \* \*

For the foregoing reasons, we: (1) AFFIRM the district court's entry of summary judgment in favor of the City and in favor of Lopez on Sauceda's excessive force claim; (2) REVERSE the district court's entry of summary judgment in favor of Lopez on Sauceda's false arrest claim; and (3) and REMAND for further proceedings consistent with this opinion.