REVISED June 23, 2025

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 8, 2025

Lyle W. Cayce
Clerk

No. 24-40174

Ricardo Sauceda,

*Plaintiff—Appellant*,

*versus*

Hector Lopez, *Individually and in his official capacity as a Peace Officer for the City of San Benito, Texas Police Department*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:17-CV-135

Before Jones and Oldham, *Circuit Judges*, and Hendrix, *District Judge*.[*]

Per Curiam:[†]

---

[*] United States District Judge for the Northern District of Texas, sitting by designation.

[†] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 24-40174

Officer Hector Lopez of the San Benito Police Department was responding to a neighborhood domestic dispute when he encountered Ricardo Sauceda standing on the front lawn of his home across the street from a member of the Cortez family, who accused Sauceda of acting aggressive and making obscene gestures. Sauceda declined to identify himself, and he began retreating. Lopez entered the property through a gate in a chain-link fence and subdued Sauceda before placing him in handcuffs. Prosecutors dropped their charges against Sauceda, but he filed this Section 1983 lawsuit, which states claims of excessive force and false arrest against Officer Lopez.

The district court granted summary judgment to Lopez on qualified immunity grounds after determining that there was no constitutional violation. A panel of this court disagreed, holding that, "at minimum," Sauceda "raised genuine issues of fact" as to whether Lopez violated the Fourth Amendment when he conducted a warrantless arrest within the curtilage of Sauceda's home. *See Sauceda v. City of San Benito*, 78 F.4th 174, 185 (5th Cir. 2023) (*Sauceda I*). The previous panel concluded that a fenced front yard lined with foliage constitutes curtilage even if it remains accessible through a latched gate. *Id.* at 184–86. *Sauceda I* has clearly established this circuit's curtilage law that will govern future cases in which an officer enters a citizen's yard through a latched gate.

The *Sauceda I* panel, however, remanded this case for the district court to consider in the first instance for qualified immunity purposes whether the law was clearly established in 2015 when the encounter between Sauceda and Lopez occurred. *Id.* at 188–89. The district court held that it was not. We AFFIRM.

## I. BACKGROUND

The issues in this litigation date back to June 2015, when Marco Cortez called the San Benito Police Department and alleged disorderly conduct by Sauceda.  Officer Lopez arrived at the scene and interviewed Cortez, who was attending a graduation party for one of his sisters.  The festivities took place across the street from the Sauceda residence.  Cortez told Lopez that he had left the party and was waiting outside for his wife when Sauceda began making offensive gestures from his front lawn and yelling, "What are you looking at?"  Cortez indicated that he "wanted to file a report" to document the interaction.

Officer Lopez crossed the street to speak with Sauceda, who was still standing outside on his front lawn.  The Sauceda property, including a concrete driveway, was enclosed by a chain-link fence, which had two entrances: a wide gate for vehicles and a smaller entry for individuals.  Both gates were closed when Lopez arrived at the scene, and posted to the fence were signs that said "no trespassing" and "beware of dog."

Lopez and Sauceda spoke from opposite sides of the fence near the smaller entry.  Most of their interaction was captured by body-cam footage.  The footage begins with Sauceda explaining a history of animosity between him and the neighbor whose home Cortez was visiting.  Lopez requested identification for purposes of making a report, and Sauceda refused.  He said, "You got a camera.  You think I'm doing something.  I'm not doing anything bad.  I'm minding my own business.  Ya te dije lo que paso.  You don't understand, then."  Lopez responded, "I need your information right now."  Sauceda said, "I'm not giving you anything," before turning and taking several steps toward his home.

Officer Lopez began to push open the small gate next to him.  Sauceda turned, hurried back to the gate, stood in front of Lopez, and said, "Hey, you're not getting into my house without a search warrant."  Lopez took a

3

step or two forward, reached for Sauceda, and responded, "No, I'm going after you, brother." Sauceda began to walk backward as he pushed or slapped Lopez. The two men took several additional steps until Lopez was able to take hold of Sauceda, who fell to his knees. In the ensuing struggle, Officer Lopez ultimately subdued Sauceda and handcuffed him.

Two years later, Sauceda filed suit against the City of San Benito in Texas state court. He quickly added Lopez as a defendant and asserted Section 1983 claims for false arrest and excessive force. The City removed the case to federal court. The district court granted summary judgment to the defendants after concluding that Lopez had probable cause to arrest Sauceda, and that the arrest did not otherwise violate the Constitution. This court reversed as to the false arrest claim, holding that "even if probable cause existed to arrest Sauceda . . . Lopez lacked authority to enter the curtilage of [his] home to arrest him." *Sauceda I*, 78 F.4th at 184.

The parties litigated on remand whether it was "clearly established" that Lopez lacked authority to arrest Sauceda. The district court determined that it was not and granted summary judgment to Lopez. Sauceda argues in this appeal that the district court erred because it was clearly established in 2015 that an officer violates the Constitution by entering the curtilage of a home to conduct a warrantless arrest without a valid exception.[1]

## II. LEGAL STANDARD

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Devoss v. Sw. Airlines Co.*,

_____

[1] Lopez also argues that "[t]he district court erred in failing to adhere to the law of the case doctrine and mandate rule." And that the district court erred by limiting his wrongful arrest claim to "a few seconds." Both arguments were correctly rejected by the district court. Sauceda misinterprets the district court decision, which does not conflict with the previous opinion from this court.

903 F.3d 487, 490 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Hagen v. Aetna Ins.*, 808 F.3d 1022, 1026 (5th Cir. 2015)). Lopez is entitled to summary judgment if he can show both that "there is no genuine dispute as to any material fact," and that he "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The facts are not disputed by either party, so our review is limited to a single legal question: whether the case law "clearly established" in 2015 that Officer Lopez violated the Fourth Amendment.

## III. DISCUSSION

When a defendant properly invokes qualified immunity, the burden shifts to the plaintiff to "demonstrate the inapplicability of the defense." *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). Sauceda contends that qualified immunity should not apply because "[t]he law was clearly established . . . that entry of the curtilage . . . to conduct a warrantless arrest without a valid exception was a violation." But Sauceda oversimplifies the relevant question, which is whether it was clearly established that the Fourth Amendment forbade Lopez from opening the unlocked gate, stepping onto the property, and reaching out to arrest Sauceda, who had stood in plain view and argued with Lopez in close proximity to the street. *See Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) ("[W]e have repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced.") (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2083 (2011)).

The law is "clearly established" if it is "sufficiently clear" that "every reasonable official" would understand that he violated it. *Ashcroft*,

563 U.S. at 732, 131 S. Ct. at 2083 (quotation marks and citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1093 (1986)). Its protection can be overcome without a "case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017) (quotation marks and citation omitted).

The district court explained that summary judgment is warranted because Sauceda failed to identify any precedent clearly establishing that Lopez arrested him within the curtilage of his home when he stood on his front lawn, behind a chain-link fence, and near the road. Sauceda disputes this deficiency. He contends his case is analogous to another in which this court held that the backyard of an apartment building is "sufficiently removed and private in character" to constitute part of the curtilage if it is "completely removed from the street and surrounded by a chain link fence." *Fixel v. Wainright*, 492 F.2d 480, 484 (5th Cir. 1974). But the facts of that case were different.[2] Lopez entered a gate in the front yard abutting the street, rather than a back yard completely surrounded by fencing with no gate. Sauceda also relies on case law from the Supreme Court, which requires that curtilage questions be resolved with reference to four factors: (1) proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from

---

[2] Notably, the Supreme Court has repeatedly reserved the question of whether plaintiffs can rely on circuit court precedents, as opposed to those of the Supreme Court itself, to demonstrate "clearly established law." *See District of Columbia v. Wesby*, 583 U.S. 48, 66 n.8, 138 S. Ct. 577, 591 (2018); *Reichle v. Howards*, 566 U.S. 658, 665–66, 132 S. Ct. 2088, 2094 (2012).

observation. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139 (1987). He contends that these factors clearly establish the unlawfulness of his arrest.

We disagree for several reasons. First, contrary to Sauceda's argument, it is far from clear that any of these factors strongly favor either party: (1) Lopez arrested Sauceda on his front lawn, but body-cam footage shows that Sauceda was standing closer to the street than to his home; (2) Sauceda stood behind a chain-link fence, but the unlocked gate allowed easy access, and driveways are customarily used by visitors to access a residence; (3) a front lawn is not a hospitable locale for the sort of private activities that courts strictly associate with the home; and (4) Lopez could easily see almost all of the front lawn, including Sauceda, who stood mere feet away from him. Sauceda ignores these ambiguities, and instead of addressing them, he asserts without citing precedent that none of the factors support Lopez. This is not enough to satisfy his burden.

Second, Sauceda overemphasizes the "enclosure" factor by misconstruing Supreme Court dicta stating "it is plain that [a] fence surrounding [a] residence serves to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house." *Id.* at 302, 107 S. Ct. at 1140. The facts of that case did not require the Court to address whether all property enclosed by a fence is within the curtilage of a home as a matter of law. And making the enclosure factor categorical would render the other factors superfluous.

Third, it is important to remember that the Supreme Court only articulated the curtilage factors after reviewing its "own cases and the cumulative experience of the lower courts," which means that earlier precedents serve as a guide for applying the factors. *Id.* at 301, 107 S. Ct. at 1139. Those precedents—together with several from this circuit that came

later—make plain that the law was unclear. *Compare, e.g.*, *Fixel*, 492 F.2d at 484 (grassy area behind an apartment building is curtilage if "completely removed from the street and surrounded by a [gateless] chain link fence"), *with United States v. Varkonyi*, 645 F.2d 453, 457–58 (5th Cir. Unit A 1981) (private scrap metal yard enclosed by a fence with an open gate is not curtilage), *United States v. Thomas*, 120 F.3d 564 (5th Cir. 1997) (area adjoining an apartment building is not curtilage if surrounding fence has an open gate), *United States v. Beene*, 818 F.3d 157, 162 (5th Cir. 2016) (driveway partly encircled by fences is not curtilage), *and United States v. Moffitt*, 223 Fed. App'x 409, 411–12 (5th Cir. 2007) (front lawn and driveway surrounded by chain-link fence with an open gate and four "no trespassing" signs is not curtilage).

The previous panel determined that an enclosed area is within the curtilage of a home if it cannot be accessed through an open gate. *Sauceda I*, 78 F.4th at 184–85. But it just as easily could have concluded that the presence of a gate—whether open or closed—is enough to eliminate any reasonable expectation of privacy. Circuit precedent applying the curtilage factors is "sparse," and no case was directly analogous. *United States v. Cooke*, 674 F.3d 491, 495 (5th Cir. 2012). *See Kinney v. Weaver*, 367 F.3d 337, 386 (5th Cir. 2004) (Jones, J., concurring in part and dissenting in part) ("[T]his court and seven other circuits have recognized that public officials are more likely entitled to qualified immunity when the underlying constitutional law depends on balancing tests enforced by the judiciary, and no factually similar case exists.").

In sum, until this litigation, it remained unresolved in this court whether the Fourth Amendment allows law enforcement officers to forego the warrant requirement and arrest a person standing outside of their home, on private property, and on the opposite side of a chain-link fence. A previous panel of this court reversed the district court, which had itself

reasonably concluded after closely analyzing the issue that Lopez acted consistent with the Constitution. This is not a case in which "every reasonable officer" would have recognized that his actions violated the Constitution. *Ashcroft*, 563 U.S. at 732, 131 S. Ct. at 2083. Nor is it an example of "plai[n] incompeten[ce]." *Id.* at 743, 131 S. Ct. at 2085 (quotation marks and citation omitted). And there is no argument that Lopez "knowingly violate[d] the law." *Malley*, 475 U.S. at 341, 106 S. Ct. at 1096. This is more aptly characterized as a case in which competent, reasonable legal thinkers could (and did) disagree about how to properly apply inconclusive case law.

For the foregoing reasons, we AFFIRM the judgment of the district court.